336 So.2d 80 (1976)
Leon WEST, Individually and As Personal Representative of the Estate of Gwendolyn West, Deceased, et al., Plaintiffs-Appellees,
v.
CATERPILLAR TRACTOR COMPANY, INC., Defendant-Appellant.
No. 46709.
Supreme Court of Florida.
July 21, 1976.
*82 Robert Orseck of Podhurst, Orseck & Parks, Ser & Keyfetz, and Berkell, Strauss & Benjamin, Miami, for plaintiff-appellee.
James S. Usich of the Law Offices of Papy, Levy, Carruthers & Poole, Coral Gables, for defendant-appellant.
James E. Tribble and Mark Hicks of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for Dade County Defense Bar Ass'n, amicus curiae.
William M. Hicks, Miami, for Academy of Florida Trial Lawyers, amicus curiae.
ADKINS, Justice.
This case is presented on certificate as authorized by Fla. Stat. § 25.031, F.S.A., and in Rule 4.61, Florida Appellate Rules, 32 F.S.A., from the United States Court of Appeals for the Fifth Circuit, 504 F.2d 967, in an appeal from a final judgment of the trial court which applied the doctrine of strict liability in a products liability suit.
The court states that:
"A caterpillar grader operated by an employee of Houdaille Industries struck and ran over, with its left rear tandem wheel, Gwendolyn West on a street under construction in Miami, Florida, on September 1, 1970. Gwendolyn West died of massive internal injuries after six days in the hospital. As a result, the deceased's husband, Leon West, individually and as administrator of the estate of his deceased wife, claimed a right to damages against Houdaille Industries and Caterpillar Tractor Company, Inc., the manufacturer of the machine. He ultimately settled with Houdaille Industries for $35,000 damages and brought a products liability suit against the manufacturer of the grader, Caterpillar Tractor Company, Inc., in the United States District Court, in and for the Southern District of Florida bottomed on diversity of citizenship jurisdiction.
"West's Complaint contained two counts: (1) negligent design of the grader by failure to provide an audible warning system for use while backing the grader, by failure to provide adequate rear view mirrors, and by manufacturing the grader with a blind spot created by obstructions when looking to the rear while driving in reverse, and (2) a breach of implied warranty or strict liability based upon the same design defects.
"At trial, the evidence indicated that preceding the accident Gwendolyn West had walked to the corner, stood on the west curb of the street which was under construction, speaking to a friend, for a period while the grader operated in a forward manner, southward and proceeded to pass her. The machine reached the end of its southward operation and commenced to back up. In the meantime, Mrs. West began walking across the *83 street intersecting the path of the grader while it was travelling in reverse. She had been waiting for a bus, and as it approached she commenced to walk across the street, looking to her left; and then she looked into her purse; and continued to look into her purse until the time of the accident. She did not look to her right at any time toward the approaching trader. Both West and Caterpillar presented extensive conflicting expert testimony about the alleged defects in the design of the caterpillar.
"The expert proof on the plaintiff's side, in essence, showed improper design and configuration of various parts of the grader obstructing visibility to the rear; absence of appropriate mirrors; and absence of available warnings on a machine created for rearward use; and design with a "blind spot" behind the operator.
"The expert proof of the defendant, in essence, was that the machine was designed in an ordinary, standard fashion in a practical, reasonable manner, and thus was properly designed and constructed in a reasonably safe manner.
"The district court submitted the case to the jury on three potential theories of recovery: negligence, which is not pertinent to this certificate; breach of an implied warranty of merchantability; and strict tort liability. On implied warranty the Court instructed the jury that:
"Thus, in order for the plaintiff to prevail on the basis of the breach of an implied warranty of merchantability, the plaintiff must establish each of the following elements by a preponderance of the evidence:
"1. The motor grader manufactured by the defendant, Caterpillar Tractor Company, was not reasonably fit for the purposes for which it was sold and intended to be used;
"2. The motor grader manufactured by the defendant was defective on the date of its delivery to Houdaille Industries, whose employee was operating the vehicle at the time of the accident; and
"3. The plaintiff incurred damages as a result of the alleged defects.
"On strict liability, the Court instructed:
"... in order for the plaintiffs to recover under the theory of strict tort liability, the plaintiff must establish each of the following elements by a preponderance of the evidence:
"1. That at the time of the sale the road-grading vehicle was in a defective condition unreasonably dangerous to foreseeable users or bystanders; and
"2. That the defective, unreasonably dangerous condition in the road-grading vehicle was a proximate cause of the damages complained of in this litigation by the plaintiff.
"Additionally, the Court asked the jury to consider Gwendolyn West's negligence:
"... the burden is upon the defendant, Caterpillar Tractor Company, to establish by a preponderance of evidence that Mrs. West was contributorily negligent, as alleged, and that such negligence contributed one of the proximate causes of any injuries sustained by the plaintiff. On the defense of contributory negligence you must determine... .
"1. Was Mrs. West herself negligent in the manner alleged by the defendant? If yes,
"2. Was such negligence a proximate cause of the incident complained of by the plaintiff? If yes,
"3. What was the percentage of Mrs. West's negligence which contributed to the accident complained of by the plaintiff?
"The Court did not instruct the jury as to assumption of risk.[1]
[1] "The appellant contends that it made timely application for jury instruction on its defense as pled of assumption of risk. The appellee denies same."
"In answer to special interrogatories, the jury found Caterpillar liable on all three theories of recovery and determined that damages totalled $125,000. The jury also concluded that Mrs. West's negligence contributed to the accident to a degree of 35 percent.

*84 "The Court entered judgment for West and disregarded comparative negligence on the basis of strict liability and concluded that contributory (comparative) negligence was no defense to strict liability in Florida. The Court thus awarded damages of $90,000 which represented the full jury award of $125,000 set off by the earlier $35,000 settlement. This appeal followed.
"3. Questions to be Certified.

"1. (a) Under Florida law, may a manufacturer be held liable under the theory of strict liability in tort, as distinct from breach of implied warranty of merchantability, for injury to a user of the product or a bystander?
"(b) If the answer to 1(a) is in the affirmative, what type of conduct by the injured party would create a defense of contributory or comparative negligence?
"(1) In particular, under principles of Florida law, would lack of ordinary due care, as found by the jury in this case, constitute a defense to strict tort liability?
"2. Assuming Florida law provides for liability on behalf of a manufacturer to a user or bystander for breach of implied warranty, what type of conduct by an injured person would constitute a defense of contributory or comparative negligence?
"(a) In particular, does the lack of ordinary due care, as found by the jury in the case, constitute such a defense?"
* * * * * *
Products liability deals with recourse for personal injury or property damage resulting from the use of a product and, in the past, has covered actions for negligence, breach of express warranty, breach of implied warranty, and fraud. These theories of recovery have been refined and consolidated to such an extent that the distinctions frequently have more theoretical than practical significance. As a result the theory of strict liability has evolved to complement the traditional conditional warranty and negligence theories. A statement of this theory appears in the American Law Institute Restatement (Second) of Torts § 402 A, as follows:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
"(2) The rule stated in Subsection (1) applies although
"(a) the seller has exercised all possible care in the preparation and sale of his product, and
"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
Strict liability was adopted at an early date by the California Supreme Court in Greenman v. Yuba Power Prod., Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049, 1054 (1963):
"A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."
In the development of products liability case law by the Courts of this State many of the vestiges of the traditional contractual "warranty" have been removed. It was traditionally recognized that, unless there is privity, liability to the consumer should be in tort and not in contract. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1133-34 (1960). In Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953), this Court aligned itself with those courts holding that a consumer could bring a suit on the theory of implied warranty against the *85 manufacturer for improper labeling of seed notwithstanding want of privity. The District Court of Appeal in Berstein v. Lily-Tulip Cup Corp., 177 So.2d 362, 364 (Fla. App.3d 1965) receded further from the privity requirement when it said:
"We fully recognize that the Florida law has not reached the point where the doctrine of privity has been removed in all suits based upon implied warranty. However, upon our review of the law we conclude that privity no longer obtains in an implied warranty suit by a consumer against a manufacturer."
On certiorari, this opinion was approved by this Court. Lily-Tulip Cup Corp. v. Berstein, 181 So.2d 641 (Fla. 1966).
We made further inroads into the elimination of privity when the product involved was dangerous or an inherently dangerous instrumentality. See Hicks & Sternlieb, Products Warranty Law in Florida  A Realistic Overview, 25 U.Miami L.Rev. 241 (1971); and Matthews v. Lawnlite Co., 88 So.2d 299 (Fla. 1956). The court stated in Keller v. Eagle Army-Navy Dept. Stores, Inc., 291 So.2d 58, 60 (Fla.App. 4th 1974):
"Florida has long recognized that certain instrumentalities are `dangerous instrumentalities' per se, such as an automobile driven on the highways (Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629), an airplane in operation, (Shattuck v. Mullen, Fla.App. 1959, 115 So.2d 597), an operated motorcycle, (Western Union Telegraph Co. v. Michel, 1935, 120 Fla. 511, 163 So. 86) and all boats (Sec. 371.52, F.S.A.), and strict liability has been imposed upon the owners thereof for their improper use. The Supreme Court has also recognized that certain items may be dangerous instrumentalities in fact."
An exception to the privity requirement involved food products when the court permitted an ultimate consumer to recover against a food manufacturer despite the absence of privity. Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313 (1944). See also Reese v. Florida Coca-Cola Bottling Co., 256 So.2d 392 (Fla.App. 1st 1972).
Not only has the court made inroads into the requirement of privity, but has always extended exceptions to broader categories of persons, such as prospective or potential customers (Matthews v. Lawnlite Co., supra; McCarthy v. Florida Ladder Co., 295 So.2d 707 (Fla.App.2d 1974)); employees of purchasers (Barfield v. Atlantic Coastline R.R. Co., 197 So.2d 545 (Fla.App.2d 1967)). In Toombs v. Fort Pierce Gas Co., 208 So.2d 615, 617 (Fla. 1968), the Court designated the product (propane storage gas) as falling within the dangerous instrumentality exception, saying:
"The inherently dangerous instrumentality qualification of the privity requirement in warranty, when applicable, has ... been regarded as extending liability to those persons one `should expect to use the chattel lawfully or to be in the vicinity of its probable use.' 28 Fla.Jur. 522."
The Court held that the dangerous instrumentality exception to the privity requirement was applicable so that liability was extended to persons one should expect to be in the vicinity of the proper use of the chattel.
We approached strict liability in Green v. American Tobacco Co., 154 So.2d 169 (Fla. 1963), which was a suit against the manufacturer and distributor of cigarettes. The Court observed that the suit involved a commodity which was available indiscriminately to the public generally, and applied a rule of absolute or strict liability to the manufacturer. The question certified to this Court by the United States Court of Appeals read as follows:
"Does the law of Florida impose on a manufacturer and distributor of cigarettes absolute liability, as for breach of implied warranty, for death caused by using such cigarettes from 1924 or 1925 until February 1, 1956, the cancer having developed prior to February 1, 1956, and the death occurring February 25, 1958, when the defendant manufacturer and *86 distributor could not on, or prior to, February 1, 1956, by the reasonable application of human skill and foresight, have known that users of such cigarettes would be endangered, by the inhalation of the main stream smoke from such cigarettes, of contracting cancer of the lung?" 154 So.2d at 170.
This Court answered the question as follows:
"Upon the critical point, our decisions conclusively establish the principle that a manufacturer's or seller's actual knowledge or opportunity for knowledge of a defective or unwholesome condition is wholly irrelevant to his liability on the theory of implied warranty, and the question certified must therefore be answered in the affirmative." 154 So.2d at 170-71.
See also McLeod v. W.S. Merrell Co., 174 So.2d 736 (Fla. 1965).
In a products liability suit against a manufacturer of a commercial product by an ultimate consumer or a user, the sole test has been whether or not the product was reasonably safe for its intended use, as manufactured and designed, when it left the plant of the manufacturer. This Court in Matthews v. Lawnlite Co., 88 So.2d 299, 300 (Fla. 1956), said:
"[C]ases have so often departed from or modified the old theory that an innocent third party who purchases from a retailer can not sue a manufacturer because of absence of privity of contract that the doctrine may be said to have been abandoned in many jurisdictions. A doctrine more in line with reason and justice has been substituted for it and may be said to have been crystallized in Restatement of the Law of Torts, Sec. 398, Vol. 2, page 1084, as follows:
"`A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use, for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.'"
From the foregoing analysis it is apparent that the Florida courts in many instances have imposed an absolute or strict liability in tort upon a manufacturer for placing a product on the market knowing that it is to be used without inspection for defects which cause injury to a human being. The manufacturer, by placing on the market a potentially dangerous product for use and consumption and by inducement and promotion encouraging the use of these products, thereby undertakes a certain and special responsibility toward the consuming public who may be injured by it. We believe that the prior decisions of this Court are in conformity with the principles set forth in the Restatement (Second) of Torts § 402A, quoted above. Such a recognition by the Court is no great new departure from present law and, in most instances, accomplishes a change of nomenclature. We should take a realistic view of the doctrine of products liability in Florida, as our distinctions frequently have been of more theoretical than practical significance. See Keeton, Products Liability, 49 Va.L.Rev. 675, 676 (1963).
The court in Royal v. Black and Decker Mfg. Co., 205 So.2d 307, 309 (Fla.App.3d 1967), discussing the trend of Florida decisions toward strict liability, said:
"A the heart of each theory is the requirement that the plaintiff's injury must have been caused by some defect in the product. Generally, when the injury is in no way attributable to a defect, there is no basis for imposing product liability upon the manufacturer. It is not contemplated that a manufacturer should be made the insurer for all physical injuries caused by his products."
In other words strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user *87 should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
We adopt the doctrine of strict liability as stated by the A.L.I. Restatement (Second) of Torts § 402 A. In this, we are not alone.[1]
The Dade County Defense Bar Association, as amicus curiae, questions the authority of this Court to adopt the provisions of the Restatement of Torts § 402A, where the Legislature has spoken on the subject by the enactment of the Uniform Commercial Code. It contends that judicial adoption of the strict liability doctrine conflicts with the Uniform Commercial Code.
In Ford Motor Co. v. Pittman, 227 So.2d 246, 249 (Fla.App. 1st 1969), the court discussed the effect of the U.C.C. upon the doctrine of implied warranty in products liability actions:
"So, we reach the real question here presented: Did enactment of the Uniform Commercial Code in 1965 sweep away in one stroke of the legislative broom the jurisprudence of this State pertaining to the doctrine of implied warranty? Apparently, from their briefs and arguments, both parties to this appeal are of this view. Although we are somewhat *88 fearful to tread upon such noncontroversial ground, we are equally fearful of casting into the trash can of legislative unforeseeability some fifty years of this State's jurisprudence upon a critical subject of paramount importance to the citizens of this State. And, unless the legislature has in unequivocal terms spelled out to the courts of this State that it has by the enactment of the omnibus Uniform Commercial Code severed the implied warranty doctrine from the jurisprudence of this State, we will not be the operator of the guillotine."
Even though the Restatement § 402A and the U.C.C. provide conflicting products liability rules, that fact alone does not establish that a court in a U.C.C. jurisdiction that followed the Restatement § 402A would be improperly ignoring a legislative enactment. This Court would be prevented from following the strict liability rule only if the Legislature intended the U.C.C. warranty remedies to be exclusive in products liability cases. See Strict Tort Liability, 22 Stan.L.Rev. 713, 754 et seq.
In Caruth v. Mariani, 11 Ariz. App. 188, 463 P.2d 83, 87 (1970), a products liability suit based upon strict tort liability, the following appears:
"Finally, defendants contend that our decision in this case should be governed by those portions of the Uniform Commercial Code... .
"The U.C.C. parallels the doctrine of strict tort liability but the two should not be confused with each other. They are `different breeds of cat.' Strict tort liability is based on public policy. Express and implied warranties under the U.C.C. are based on contract. The U.C.C. still talks about disclaimers and notice. These are not tort concepts."
We recognize that there are two parallel but independent bodies of products liability law. One, strict liability, is an action in tort; the other, implied warranty, is an action in contract. An action under the strict liability doctrine eliminates the notice requirement, restricts the effectiveness of disclaimers to situations where it can be reasonably said that the consumer has freely assumed the risk, and abolishes the privity requirement. The doctrine of strict liability does not introduce a notion of "defective condition unreasonably dangerous to the user or consumer or to his property" which is different from the notion of "unmerchantability" as applied in warranty law. With the continued increase of products liability cases, the strict liability doctrine adapts the law to the marketing condition of today's marketing consumer. See Products Liability, 19 Rutgers L.Rev. 692 (1965).
At the present time there is no legislative impediment to the adoption of this doctrine.
We next turn to the question of whether the doctrine of strict liability should be extended to a foreseeable bystander who comes within range of the danger.
The manufacturer unquestionably intends that its product will be used by the public. There would appear to be no logic or reason in denying a right of relief to persons injured by defective merchandise solely on the ground that he was not himself a user of the merchandise. Many products in the hands of the consumer are sophisticated and even mysterious articles, frequently a sealed unit with an alluring exterior rather than a visible assembly of component parts. In today's world it is often only the manufacturer who can fairly be said to know and understand when an article is suitably designed and safely made for its intended purpose. See Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973).
Toombs v. Ft. Pierce Gas Co., 208 So.2d 615 (Fla. 1968), was an action by the customer of a gas company, his family and bystanders for injuries sustained in the explosion of a propane gas storage tank. The Court held that, with respect to bystanders injured by the explosion, the dangerous instrumentality exception to privity requirement extended the liability of the company to persons one should expect to be in the vicinity of the proper use of the chattel.
*89 The framers of the Restatement did not express an opinion on whether the doctrine should apply where harm befalls persons other than users or consumers. A majority of the courts have said that there is no adequate rationale or theoretical explanation why nonusers and nonconsumers should be denied recovery. See 63 Am.Jur.2d Products Liability § 144; and Darryl v. Ford Motor Co., 440 S.W.2d 630, 633 (Tex. 1969), where the court said:
"We hold that recovery under the strict liability doctrine is not limited to users and consumers. Piercefield v. Remington Arms Company, 375 Mich. 85, 133 N.W.2d 129 (1965); Mitchell v. Miller, 26 Conn. Sup. 142, 214 A.2d 694 (1965). There is no adequate rationale or theoretical explanation why non-users and non-consumers should be denied recovery against the manufacturer of a defective product. The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risks of personal injury and/or property damage. A manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury because of the defective condition. Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962); Mitchell v. Miller, supra."

The court in Caruth v. Mariani, 11 Ariz. App. 188, 463 P.2d 83, 85 (1970), in extending the doctrine to bystanders, said:
"All states which have adopted the theory of strict tort liability have extended the theory to the bystander when called upon to do so. Elmore v. American Motors Corp., 70 Cal.2d 578, 75 Cal. Rptr. 652, 451 P.2d 84 (1969); Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694 (1965); Piercefield v. Remington Arms Co., 375 Mich. 85, 113 N.W.2d 129 (1965); Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. 1969); and Sills v. Massey-Ferguson, Inc., D.C., 296 F. Supp. 776 (1969), interpreting the law of Indiana and see also Klimas v. International Telephone & Telegraph Corp., D.C., 297 F. Supp. 937 (1969), interpreting the law of West Virginia wherein the `consumer-user' limitation of Restatement (Second) of Torts § 402A was eliminated to await `development with respect to the extent of liability to non-user, nonconsumer injured persons.'"
The public policy which protects the user and the consumer of a manufactured article should also protect the innocent bystander. Of course, the duty of a manufacturer for breach of which liability will attach runs only to those who suffer personal injury or property damage as the result of using or being within the vicinity of the use of the dangerous instrumentality furnished by a manufacturer which fails to give notice of the danger. Injury to a bystander is often feasible. A restriction of the doctrine to the users and consumers would have to rest on the vestige of the disappearing privity requirement. This requirement has been often applied, and frequently mutilated, in cases where a supplier of chattels was held liable on some theory of warranty.
We now hold that a manufacturer may be held liable under the theory of strict liability in tort, as distinct from breach of implied warranty of merchantability, for injury to a user of the product or a bystander, thereby answering question 1(a) in the affirmative.
We now turn to question 1(b) which reads as follows:
"(b) If the answer to 1(a) is in the affirmative, what type of conduct by the injured party would create a defense of contributory or comparative negligence?
"(1) In particular, under principles of Florida law, would lack of ordinary due care, as found by the jury in this case, constitute a defense to strict tort liability?"
It has been held generally that simple, contributory negligence is not a defense in a strict liability action, see 72 C.J.S. Supp. Products Liability § 45; 63 Am.Jur.2d Products Liability § 150, if such a defense is based upon the failure of the user to discover the defect in the product or the failure *90 of the user to guard against the possibility of its existence.
Strict liability does not make the manufacturer or seller an insurer. Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence.
The gist of the doctrine of contributory negligence is that the person injured should not recover when it appears that the injury would have been avoided if the injured person had exercised reasonable care. In other words, the injured person must act as a reasonable person in exercising for his own safety the caution commensurate with the potential danger. This defense has been recognized where a products liability action is based on negligence. See Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla. 1958); Matthews v. Lawnlite Co., supra. Under the "reasonable man" standard the failure of the consumer or user, in the absence of warning, to discover a defect in the product or the failure to guard against the possibility of its existence would not bar recovery under the doctrine of contributory negligence. See 63 Am.Jur. Products Liability § 149.
As stated in the Restatement (Second) of Torts § 402A, comment at 356:
"Contributory negligence. Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."
We recognize that contributory negligence of the user or consumer or bystander in the sense of a failure to discover a defect, or to guard against the possibility of its existence, is not a defense. Contributory negligence of the consumer or user by unreasonable use of a product after discovery of the defect and the danger is a valid defense. Prior to the adoption of the comparative negligence doctrine, a plaintiff's conduct as the sole proximate cause of his injuries would constitute a total defense. See Coleman v. American Universal of Florida, Inc., 264 So.2d 451 (Fla.App. 1st 1972), quoting from 2 Frumer and Friedman Products Liability § 16.01(3), at 3-20 to 3-31. The defendant manufacturer may assert that the plaintiff was negligent in some specified manner other than failing to discover or guard against a defect, such as assuming the risk, or misusing the product, and that such negligence was a substantial proximate cause of the plaintiff's injuries or damages. See Annot., 13 A.L.R.3d 1057, 1100-1101. The fact that plaintiff acts or fails to act as a reasonable prudent person, and such conduct proximately contributes to his injury, constitutes a valid defense. In other words, lack of ordinary due care could constitute a defense to strict tort liability.
We now have comparative negligence, so the defense of contributory negligence is available in determining the apportionment of the negligence by the manufacturer of the alleged defective product and the negligent use made thereof by the consumer. The ordinary rules of causation and the defenses applicable to negligence are available under our adoption of the Restatement rule. If this were not so, this Court would, in effect, abolish the adoption of comparative negligence. See Powers v. Hunt-Wesson Foods, Inc., 64 Wis.2d 532, 219 N.W.2d 393 (1974).
The last certified question reads as follows:

*91 "2. Assuming Florida law provides for liability on behalf of a manufacturer to a user or bystander for breach of implied warranty, what type of conduct by an injured person would constitute a defense of contributory or comparative negligence?
"(a) In particular, does the lack of ordinary due care, as found by the jury in the case, constitute such a defense?"
The adoption of the doctrine of strict liability in tort does not result in the demise of implied warranty. If a user is injured by a defective product, but the circumstances do not create a contractual relationship with a manufacturer, then the vehicle for recovery could be strict liability in tort. If there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains.
Contributory negligence is generally considered to be a doctrine of the law of torts. However, breach of warranty actions retain certain aspects of the law of torts and frequently a given set of facts could support either an action for breach of implied warranty or an action for negligence. As a consequence questions have arisen as to whether a defense of contributory negligence may properly be asserted in an action for breach of warranty. American Law of Products Liability, Second Edition, Hursh and Bailey, Volume 1, § 3:81, pp. 619-21, contains the following:
"It would seem at first glance that there is no room for operation of any of the principles of the law of negligence in a purely contractual area. But when it is considered that liability for breach of warranty exists only where it is shown that the breach was the proximate cause of the harm for which recovery is sought, the question arises whether evidence which, in a negligence suit, might be introduced as showing the injured person's contributory negligence, may not be introduced in a breach of warranty action to show that the harm alleged to flow from a breach of warranty actually was otherwise caused.
"The cases as to whether contributory negligence is a defense in a products liability case based on breach of warranty are in (at least semantic) disagreement. Some cases hold or state that contributory negligence is available as a defense, and there is also some authority which impliedly supports the view that contributory negligence, where established, will bar recovery for breach of warranty.
"On the other hand, there are decisions holding or indicating that contributory negligence is not available as a defense in an action for an alleged breach of a warranty. And there appears to be some conflict even within some jurisdictions as to whether contributory negligence is a defense."
In Coleman v. American Universal of Florida, Inc., 264 So.2d 451 (Fla.App. 1st 1972), the sole question under consideration was whether the trial court correctly instructed the jury that the plaintiff's contributory negligence constituted a bar to his recovery in an action for breach of implied warranty. The court pointed out that the authorities were "pretty evenly divided on the question before us." The court then said:
"In this legal situation, with the authorities fairly evenly divided, we are inclined to the view that contributory negligence is available as a defense in an action for breach of an implied warranty, even though it may superficially look as though we are thereby approving a tortious defense in an action ex contractu.
"Our philosophy in this matter was well expressed by Schreiber and Rheingold in their `Products Liability' (Chap. 5, page 32) in their concluding remarks, as follows:
"`As is readily apprehended, contributory negligence in the defense of a product liability action is a can of worms. But, if it is recognized that there is not [sic] such thing as "contributory negligence" and that the defense contemplated is that of abnormal, unintended, or unforeseen use, or is that of assumed risk, or that of lack of due *92 care, then there may perhaps be order brought out of the chaos. However, it is strongly suggested that even these defenses are, in the absence of uncontrovertible facts, no panacea for defendants. There are much better ways to beat a product liability claim than relying on contributory negligence, an illusory defense.'" 264 So.2d 454.
We approve this decision. Unreasonable exposure to a known and appreciated risk should bar recovery in an action based upon implied warranty just as it bars recovery in negligence. However, it is unreasonable to require the noncommercial consumer to make any sort of detailed or expert inspection. If the injured person's conduct is a proximate cause of the injuries, the defendant would have the right to a charge on comparative negligence in an action for breach of implied warranty. If the injured person failed to use that degree of care which a reasonably careful person would use under like circumstances then he is guilty of some negligence. If this negligence was a proximate contributing cause of the injuries, the defendant would be entitled to raise the defense of contributory or comparative negligence. In other words, lack of ordinary due care could constitute such a defense.
To summarize, we recognize that in the present day marketing milieu treatment of the manufacturers' liability to ultimate purchasers or consumers in terms of implied warranty is simply using a convenient legal device to accomplish some recourse for an injured person. Traditionally, warranty has had its source in contract. Ordinarily there is no contract in a real sense between a manufacturer and an ultimate consumer of its product. As a result, warranty law in Florida has become filled with inconsistencies and misapplications in the judiciary's attempt to provide justice to the injured consumer, user, employee, bystander, etc., while still maintaining the contract principles of privity.
The obligation of the manufacturer must become what in justice it ought to be  an enterprise liability, and one which should not depend upon the intricacies of the law of sales. The cost of injuries or damages, either to persons or property, resulting from defective products, should be borne by the makers of the products who put them into the channels of trade, rather than by the injured or damaged persons who are ordinarily powerless to protect themselves. We therefore hold that a manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. This doctrine of strict liability applies when harm befalls a foreseeable bystander who comes within range of the danger.
Contributory or comparative negligence is a defense in a strict liability action if based upon grounds other than the failure of the user to discover the defect in the product or the failure of the user to guard against the possibility of its existence. The consumer or user is entitled to believe that the product will do the job for which it was built. On the other hand, the consumer, user, or bystander is required to exercise ordinary due care.
The adoption of the doctrine of strict liability in tort does not result in the demise of implied warranty. In an action upon implied warranty the defense of contributory or comparative negligence may be interposed, for the injured person is required to exercise "ordinary due care."
Having answered the questions certified, we return the case to the United States Court of Appeals for a decision as to the evidentiary and procedural issues which remain.
It is so ordered.
OVERTON, C.J., and ROBERTS, BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
NOTES
[1] The various states that have approved the doctrine of strict liability can be categorized as follows:

States which have specifically adopted § 402 A:
Arizona, O.S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968);
Connecticut, Wachtel v. Rosol, 159 Conn. 496, 271 A.2d 84 (1970);
Hawaii, Stewart v. Budget Rent-A-Car Corp., 52 Haw. 71, 470 P.2d 240 (1970);
Idaho, Shields v. Morton Chem. Co., 95 Idaho 674, 518 P.2d 857 (1974);
Indiana, Perfection Paint & Color Co. v. Konduris, 147 Ind. App. 106, 258 N.E.2d 681 (1970);
Iowa, Hawkeye Sec. Ins. Co. v. Ford Motor Co., 174 N.W.2d 672 (Iowa 1970);
Kentucky, Dealers Transp. Co. v. Battery Distrib. Co., 402 S.W.2d 441 (Ky. 1965);
Mississippi, State Stove Mfg. Co. v. Hodges, 189 So.2d 113 (Miss. 1966);
Missouri, Giberson v. Ford Motor Co., 504 S.W.2d 8 (Mo. 1974);
Montana, Brandenburger v. Toyota Motor Sales, 162 Mont. 506, 513 P.2d 268 (1973);
New Hampshire, Buttrick v. Arthur Lessard & Sons, Inc., 110 N.H. 36, 260 A.2d 111 (1969);
New Mexico, Stang v. Hertz Corp., 83 N.M. 730, 497 P.2d 732 (1972);
Oklahoma, Kirkland v. General Motors Corp., 521 P.2d 1353 (Okl. 1974);
Oregon, Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806 (1967);
Pennsylvania, Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966);
Rhode Island, Ritter v. Narragansett Elec. Co., 109 R.I. 176, 283 A.2d 255 (1971);
Texas, Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. 1969);
Washington, Ulmer v. Ford Motor Co., 75 Wash.2d 522, 452 P.2d 729 (1969);
Wisconsin, Dippel v. Sciano, 37 Wis.2d 443, 155 N.W.2d 55 (1967);
States which have adopted the substantial equivalent of § 402A:
Alaska, Bachner v. Pearson, 479 P.2d 319 (Alaska 1970);
California, Greenman v. Yuba Power Prod., Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1962);
Illinois, Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965);
Louisiana, Weber v. Fid. & Cas. Ins. Co. of New York, 259 La. 599, 250 So.2d 754 (1971);
Michigan, Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (1965);
Minnesota, Kerr v. Corning Glass Works, 284 Minn. 115, 169 N.W.2d 587 (1969);
Nebraska, Kohler v. Ford Motor Co., 187 Neb. 428, 191 N.W.2d 601 (1971);
Nevada, Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 470 P.2d 135 (1970);
New Jersey, Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965);
New York, Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973);
Ohio, Lonzrick v. Republic Steel Corp., 6 Ohio St.2d 227, 218 N.E.2d 185 (1966);
Tennessee, Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 (1966);
States where federal courts have predicted that § 402A would be applied:
Utah, Julander v. Ford Motor Co., 488 F.2d 839 (10th Cir.1973);
Vermont, Wasik v. Borg, 423 F.2d 44 (2nd Cir.1970).