495 So.2d 1223 (1986)
Theda KEITH, Appellant/Cross-Appellee,
v.
RUSSELL T. BUNDY & ASSOCIATES, INC., Appellee/Cross-Appellant.
No. 85-1383.
District Court of Appeal of Florida, Fifth District.
October 16, 1986.
*1224 Glen E. Wieland, Ronnie H. Walker of Walker, Miller & Ketcham, P.A., Orlando, for appellant/cross-appellee.
John N. Bogdanoff of Haas, Boehm, Brown, Rigdon, Seacrest & Fisher, P.A., Daytona Beach, for appellee/cross-appellant.
COBB, Judge.
This appeal arises from an incident on October 6, 1980, when appellant, Theda Keith (Keith), suffered injuries to her hand, including the loss of a finger, while operating a roll-slicing machine at the Golden Loaf Bakery (Golden Loaf) in Orlando. The slicer was originally manufactured by Alto Corporation (Alto), and was subsequently acquired by Russell T. Bundy & Associates, Inc. (Bundy), a dealer in used bakery equipment, who in turn sold it to Mrs. Keith's employer. The plaintiff ultimately filed suit against Alto and Bundy, alleging counts in negligence and strict liability. The complaint alleges that Bundy was negligent in selling the slicer because it was in a dangerous and defective condition, as it was subject to clogging and was not provided with sufficient safety guards. The complaint also alleges that Bundy failed to provide sufficient warning and instruction on the machine. In the strict liability count, the complaint alleges that Bundy knew or should have known of the dangerous nature of the machine, but that it failed to make the machine safe.
The trial jury reached a verdict that both Alto and Bundy placed the slicer on the market with a defect which was the legal cause of the damage to the plaintiff, and that both defendants were negligent. The jury found no negligence on the plaintiff's part, and awarded her $200,000, finding both Bundy and Alto 50% negligent. A final judgment was entered pursuant to this verdict.
Both Alto and Bundy filed motions for new trial and/or for judgment in accordance *1225 with directed verdict. The trial court denied all motions except a motion for remittitur filed by Alto. In his order, the trial judge states:
IT IS FURTHER ORDERED AND ADJUDGED that the Motion for remittitur filed by Defendant, ALTO CORPORATION, is hereby granted in the amount of one-third (1/3) of the jury verdict as the court finds that the jury should have found the Plaintiff comparatively negligent to the extent of at least one-third (1/3); or in the alternative, the Plaintiff, THEDA KEITH, shall have the right to a new trial of this matter on the issue of liability only.
Appellant Keith timely filed a notice of appeal from this order, and Bundy has cross-appealed on various points: (1) denial of a directed verdict on the strict liability count against it; (2) denial of a requested instruction on misuse of the machine by Keith; (3) denial of its requested instruction that the jury consider an "as-is" disclaimer relative to Bundy's duty to the buyer; and (4) denial of a new trial based on improper jury argument by plaintiff's counsel.[1]
Keith contends the trial court erred in ordering a remittitur of one-third of the total verdict based on its finding that "the jury should have found the plaintiff comparatively negligent to the extent of at least one-third." Bundy does not claim that the trial court was correct in ordering a remittitur but, rather, contends that the trial court's alternative grant of a new trial on liability was correct based on a finding that the jury's failure to find any comparative negligence was against the manifest weight of the evidence and that improper remarks made by plaintiff's counsel influenced the jury.
A trial judge may not use the device of a new trial order conditioned on a remittitur to increase a jury's determination of the plaintiff's contributing negligence. Cooper Transportation, Inc. v. Mincey, 459 So.2d 339 (Fla. 3d DCA 1984), review denied, 472 So.2d 1181 (Fla. 1985); St. Pierre v. Public Gas Co., 423 So.2d 949 (Fla. 3d DCA 1982). A remittitur of part of the amount recovered cannot cure a verdict which is contrary to the law or not sustained by the evidence as to any issue other than the measure of damages. Marson v. Dadeland Rent-A-Car, Inc., 408 So.2d 245 (Fla. 3d DCA 1981). The rationale behind the rule which prevents the court's alteration of the jury's apportioning of negligence is that the question of apportioning is one that is peculiarly within the province of the jury. Akermanis v. Sea-Land Service, Inc., 688 F.2d 898 (2d Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983). See also Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla. 1986).
In the instant case, it was clearly error for the trial judge to reduce the verdict by one-third based on his determination that the plaintiff should have been found negligent. The remittitur must be reversed. The question remains, however, as to whether the alternative relief of a new trial on the issue of liability is correct.
A motion for new trial is directed to the sound, broad discretion of the trial judge and his ruling thereon should not be disturbed absent a clear showing of abuse. If reasonable men could differ as to the propriety of the action taken by the trial court, then there is no abuse of discretion. Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla. 1981). It is the duty of the trial court to grant a new trial where either the verdict is against the manifest weight of the evidence, the jury has been deceived as to the force and credibility of the evidence, or the jury has been influenced by considerations outside the record. However, a trial court must not permit itself to become a seventh juror. Papcun v. Piggy Bag Discount Souvenirs, Food and Gas Corp., 472 So.2d 880 (Fla. 5th DCA 1985).
*1226 An order for a new trial must specify the specific grounds for such grant. The purpose of the requirement of articulating reasons is to allow the appellate court to properly determine whether judicial discretion has been abused. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978). Florida Rule of Civil Procedure 1.530(f) specifically provides that if an order does not state specific grounds, the appellate court "shall relinquish its jurisdiction to the trial court for entry of an order specifying the grounds for granting the new trial." This provision is mandatory. See Prime Motor Inns, Inc. v. Waltman, 480 So.2d 88 (Fla. 1985).
In the instant case, the order does not specifically state that the verdict was against the manifest weight of the evidence or that the jury was deceived or influenced; rather, the order merely requires a remittitur or new trial on liability because "the court finds that the jury should have found the plaintiff comparatively negligent to the extent of at least one-third (1/3)." This order, when read in conjunction with the court's comments during the hearing on new trial, shows that the basis of the ruling was the court's determination that the finding of zero percent negligence for the plaintiff was incorrect. Under these circumstances, the reason for the grant of a new trial on liability is apparent, and relinquishment of jurisdiction would be a useless act. See Zambrano v. Devanesan, 484 So.2d 603 (Fla. 4th DCA 1986) (court held Rule 1.530 inapplicable where the reasons for granting a new trial appear on the record).
Bundy contends that the new trial order was also properly based on the alleged prejudicial comments by the plaintiff's counsel during closing. The comments made by the trial court, however, seem to support the determination that the finding of the remittitur and a new trial on liability was based solely on the court's determination of negligence on the part of the plaintiff. In any event, the remedy granted by the trial court, a new trial only on liability, would be incorrect if prejudicial comments caused the jury to award damages that were punitive in nature. Under such circumstances, a new trial as to both damages and liability, or perhaps a new trial solely as to damages, would be proper. See Osteen v. Seaboard Coast Line Railroad Co., 305 So.2d 241 (Fla. 1st DCA 1974), cert. denied, 316 So.2d 561 (Fla. 1975).
The evidence in the instant case relied on by Bundy in support of its contention that contributory negligence was present includes the testimony of the plaintiff that she reached over to the machine to straighten out a roll which it appeared might jam, that the plaintiff had been instructed that her hand could get caught under the machine, and that she was told to turn off the machine before straightening the rolls if they got jammed, but that she failed to do so. Evidence was also presented by the plaintiff's supervisor, who testified that Keith told her that she was trying to get a roll unjammed from the blade when the accident occurred. The evidence presented by the plaintiff showed that her arm was grabbed by the roller and pulled into the machine, and that while Keith was aware of the possibility that her hand could get cut by the unprotected blade, she did not think the machine could pull her arm down to the slicing blade. The only witness to the accident was the plaintiff herself.
There was no abuse of discretion in the trial court's determination that a finding of no negligence on the part of the plaintiff was against the evidence. The evidence was uncontroverted that Keith was instructed to turn off the machine before straightening out any jammed rolls, and that she failed to do so here. Under these circumstances, reasonable men could differ as to the propriety of the trial court's grant of a new trial and, thus, no abuse of discretion is seen. Cf. Harper v. City of Tampa, 374 So.2d 1385 (Fla. 2d DCA 1979). Therefore, we affirm the trial court's grant of a new trial on the issue of liability, based on the negligence vel non of Bundy, but reverse the alternative portion of the order relating to remittitur.
*1227 Pursuant to the cross-appeal, we also reverse the trial court's denial of Bundy's motion for directed verdict based on strict liability. Strict liability does not apply to a dealer in used equipment. The evidence is uncontroverted that Bundy made no changes to the slicer after purchasing it used from another bakery in 1976, and that the machine was merely left in storage for a year until sold to Golden Loaf in "as-is  running" condition.
Essentially, the design defect upon which plaintiff bases its strict liability involved the absence of a safety guard and interlock in front of the rollers which, when contact is made, turns the machine off instantly. This plate was not placed on the machine when it was built in 1963, and was not on the machine when it was either bought or sold by Bundy. The device was first placed on such machines in 1976 or 1977.
In Masker v. Smith, 405 So.2d 432 (Fla. 5th DCA 1981), the plaintiff brought an action against a used auto dealer for, inter alia, strict liability based on an accident which occurred when the plaintiff's brakes failed eleven days after purchasing the car from the dealer. This court refused to extend liability to the dealer, stating:
Appellant asks the court to extend the doctrine of West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), to the seller of used goods. We see no basis for such extension. In West, the court said:
Strict liability does not make the manufacturer or seller an insurer. Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence.

Id. at 90.
Imposing liability on the seller of used or second hand goods for latent defects for which he is not responsible and which he could not discover by the exercise of reasonable care would make such dealer a virtual insurer against every kind of defect. See Fuquay v. Revels Motors, Inc., 389 So.2d 1238 (Fla. 1st DCA 1980). The trial court was correct in granting the summary judgment on Count III.
405 So.2d at 434.
In Fuquay, the plaintiff's estate brought a wrongful death action arising out of a rear-end collision in which the plaintiff's car exploded, allegedly due to faulty design and placement of a gas tank. The First District noted that while the allegation would be sufficient to state a cause of action against the manufacturer of the automobile because of the principle that those who create the risk and reap the profits should bear the loss, and perhaps on the vendor of the new automobile based on its role in producing and marketing products which allows them to exert pressure on the manufacturer to enhance the safety, liability could not be imposed on a seller of used cars who has no responsibility for the placement of automobiles in the stream of commerce. The court found that such a dealer is so removed from the original marketing chain as to be unable to exert any significant influence on the manufacturer, and thus should not be liable for latent design defects in the product.
In West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), the Florida Supreme Court stated:
In other words strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
336 So.2d at 86-87.
*1228 While the court adopted section 402(a) of the Restatement (2d) of Torts,[2] which deals with the liability of "sellers," the court in West dealt solely with the liability of the manufacturer of new products, not the seller of used goods. Some courts have allowed strict liability against dealers of used goods, see Hovenden v. Tenbush, 529 S.W.2d 302 (Tex.Civ.App. 1975) (seller of used bricks liable in strict liability based on "seller" language of section 402(a)), while others have refused to extend such liability. See Tillman v. Vance Equipment Co., 286 Or. 747, 596 P.2d 1299 (1979); Burrows v. Follett and Leach, Inc., 115 Wis.2d 272, 340 N.W.2d 485 (1983); Tauber-Arons Auctioneers Co., Inc. v. Superior Court, 101 Cal. App.3d 268, 161 Cal. Rptr. 789 (1980); Wilkinson v. Hicks, 126 Cal. App.3d 515, 179 Cal. Rptr. 5 (1981). See also Annot., Strict Liability in Tort: Liability of Seller of Used Product, 53 A.L.R.3d 337 (1973).
In Tillman, supra, the court expressed three justifications for the strict liability doctrine: (1) to provide compensation by spreading the risk; (2) satisfaction of the reasonable expectations of the purchaser or user; and (3) over-all risk reduction, which the court saw as the impetus to manufacture a better product. 596 P.2d at 1303. The court noted that the sale of used products does not generate the kind of expectations of safety created by the introduction of a new product into the stream of commerce, since the used market generally operates on the apparent understanding that the seller makes no particular representations about the quality being offered for sale. The court also found no risk reduction benefit, since the used dealer is normally entirely outside of the chain of distributorship and, thus, no ready channel of communication between the dealer and the manufacturer exists concerning possible dangerous defects in particular product lines or actual or potential liability claims. The court concluded that the relevant policy considerations do not justify imposing strict liability for defective products on dealers in used goods, at least in the absence of some representation of quality beyond the sale itself or of a special position vis-a-vis the original manufacturer or others in the chain of original distribution. 596 P.2d at 1304.
In the instant case, Bundy sold a used slicer "as-is" to Golden Loaf. The alleged defect, the missing interlock, was not on the original slicer manufactured by Alto in 1963, and was not in fact added until some 13 years later. The evidence showed that Bundy was unaware of the changes prior to the accident, and that Alto had never sent it any memorandum regarding the changes in design. The policies underlying the imposition of strict liability are not present here, and Bundy, as a dealer in used goods, should not be held strictly liable for a defect, if any, caused by the manufacturer. Accordingly, we hold that the trial court erred in denying Bundy's motion for a directed verdict on strict liability.
We find no merit in the cross-appellant's second and third points, and the fourth point on appeal is moot. Accordingly, we affirm the grant of a new trial on the issue of Bundy's liability for negligence, reverse the trial court's denial of a directed verdict on the issue of strict liability, and remand for further proceedings.
*1229 AFFIRMED in part; REVERSED in part; and REMANDED.
DAUKSCH and ORFINGER, JJ., concur.
NOTES
[1] Alto Corporation, while originally a party to this appeal, was dismissed pursuant to a joint motion for dismissal filed by Keith and Alto.
[2] Section 402(a) provides as follows:

Special Liability of Seller of Product for Physical Harm to User or Consumer.
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.