791 F.2d 1525
 H. Richard BATES, Personal Representative of the Estate of
Dr. Philip O. Littleford, deceased,
Plaintiff-Appellant/Cross-Appellee,
v.
COOK, INC., Defendant-Appellee/Cross-Appellant.
 No. 85-3038.
 United States Court of Appeals,
Eleventh Circuit.
 June 25, 1986.
Corrected.
 
 Herbert L. Allen, Duckworth, Allen, Dyer & Pettis, Lavinia Dierking, Orlando, Fla., for plaintiff-appellant/cross-appellee.
 Michael P. McMahon, Akerman, Senterfitt & Eidson, Orlando, Fla., C. David Emhardt, Woodard, Weikart, Emhardt & Naughton, Vincent O. Wagner, Steve E. Zlatos, Indianapolis, Ind., for defendant-appellee/cross-appellant.
 Appeals from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.
 GODBOLD, Chief Judge:
 
 
 1
 This is a complex theft of trade secrets case, brought in Florida state court and removed to federal court. It involves a complicated series of significant events that occurred, and significant contacts that existed, in Florida, Indiana, New Jersey, Tennessee, and California.
 
 
 2
 The federal district court, 615 F.Supp. 662 (D.C.Fla.1984), granted summary judgment in favor of the Indiana defendant and against the Florida resident on the basis that the cause of action was barred by the Indiana statute of limitations. The court looked to Florida's limitation of actions "borrowing statute," Fla.Stat.Ann. Sec. 95.10 (West 1982), to determine which state statute of limitations to apply. It found that the Florida borrowing statute required it to determine where the cause of action arose and concluded that it arose in Indiana.
 
 
 3
 This court must decide whether, under Florida law, a court applying the Florida borrowing statute must determine where the cause of action arose by looking (a) to the state where the "last act necessary to establish liability" occurred, or (b) to the state with the most "significant relationships" to the cause of action. The Florida law appears to this court to be uncertain, as noted in text below.[1] We therefore certify the following facts and issues for decision by the Florida Supreme Court:
 
 
 4
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS TO THE
 
 SUPREME COURT OF FLORIDA PURSUANT TO FLORIDA
 STATUTES Sec. 25.031
 
 5
 TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:
 
 
 6
 It appears to the United States Court of Appeals for the Eleventh Circuit that the above matter involves a question or proposition of law of the State of Florida which may be determinative of the cause, and there appear to be no clear controlling precedents in the decisions of the Supreme Court of Florida. The United States Court of Appeals for the Eleventh Circuit therefore certifies the following questions of law of the State of Florida for instructions concerning such questions of law, based on the facts recited herein.
 
 I. Style of case
 
 7
 The style of the case in which this certificate is made is as follows: H. RICHARD BATES, Personal Representative of the Estate of Dr. Philip O. Littleford, deceased, Plaintiff-Appellant/Cross-Appellee, versus COOK, INC., Defendant-Appellee/Cross-Appellant, No. 85-3038, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Middle District of Florida.
 
 II. Statement of facts
 
 8
 The plaintiff, H. Richard Bates, is the personal representative of the estate of Dr. Philip O. Littleford. Dr. Littleford was a cardiologist whose practice and residence were in Orlando, Florida. Defendant Cook, Inc. is an Indiana corporation engaged in the manufacture of medical equipment. Its principal place of business is Bloomington, Indiana. Prior to 1977 Dr. Littleford developed an apparatus for inserting permanent pacemaker electrodes through the subclavian vein. His work on the apparatus was done in Florida.
 
 
 9
 In the fall of 1977 Dr. Littleford entered an oral agreement with Larry Junker of Clearwater, Florida, a salesman of medical devices. Under the agreement Dr. Littleford was to clinically evaluate the apparatus and Junker's company, Medical Life Systems, Inc. was to market it. Dr. Littleton applied for a patent of the apparatus in December 1977. Extensive clinical evaluation of the apparatus was undertaken between January and late July 1978. The majority of tests were performed at Beth-Israel Medical Center in Newark, New Jersey and medical facilities in Orlando, Florida, and Nashville, Tennessee, with the remainder performed in facilities elsewhere in Florida.
 
 
 10
 In mid-December 1977 Junker telephoned Brian Bates (evidently no relation of H. Richard Bates), director of marketing for Cook, Inc. at its Indiana offices. Junker described Dr. Littleford's device and insertion technique and, in particular, a peel-away sheath that was central to Dr. Littleford's invention. In response to Junker's call Brian Bates sent Junker several conventional, non-peel-away sheaths. Before these were received Junker sent Brian Bates a letter dated December 26, 1977 enclosing drawings of the apparatus and insertion technique.
 
 
 11
 In early 1978 Brian Bates wrote Junker about the possibility of manufacturing introducer sets with peel-away sheaths and sent Junker sample introducer sets with this feature. Junker and Brian Bates met at a trade show in California and may have discussed problems with sheath wall thickness. In May 1978 Brian Bates called Junker and was informed that the Cook, Inc. design was unsatisfactory and that Junker was working with another party to develop introducer sets. Also in that month Brian Bates was contacted by a nurse in charge of cardiac catheterization at Beth-Israel in New Jersey. The nurse asked about Cook, Inc. supplying introducer sets similar to those Beth-Israel had earlier been supplied by Junker. The nurse then sent Cook, Inc. samples of the introducer sets that Junker had supplied. Through the remainder of the year Brian Bates corresponded with Dr. Victor Parsonnet, who was participating in clinical trials at Beth-Israel of Dr. Littleford's device and technique, concerning the construction of the peel-away sheath for the introducer sets.
 
 
 12
 In August 1978 Dr. Littleford's attorney told Brian Bates that Dr. Littleford considered Cook, Inc.'s testing to be a breach of confidence as to information given to Cook, Inc. by Junker. In September Cook, Inc. nevertheless began manufacturing and marketing a peel-away introducer sheath, and by October Dr. Littleford knew of this and had terminated Junker's company as licensee. In September 1979 letters patent were issued to Dr. Littleford for his invention.
 
 
 13
 Numerous suits brought by various parties ensued. In September 1979 Dr. Littleford sued Cook, Inc. for patent infringement and theft of trade secrets in federal district court in Florida. Cook, Inc. admitted subject matter and in personam jurisdiction in its answer. The district court initially ordered transfer to federal district court in Indiana but later, on Dr. Littleford's motion, dismissed without prejudice.
 
 
 14
 Cook, Inc. then filed a declaratory judgment action against Dr. Littleford in federal district court in Indiana to contest the validity of the patent. Dr. Littleford's motion to dismiss for lack of in personam jurisdiction was granted on the ground that he had not had the requisite minimum contacts with Indiana.
 
 
 15
 Junker sued Dr. Littleford in Florida state court in 1979. Junker claimed co-ownership of the patent and unlawful termination of license. Dr. Littleford counterclaimed for breach of the license agreement and recision. A judgment was entered for Dr. Littleford in January 1981.
 
 
 16
 Dr. Littleford brought the instant suit in Florida state court in July 1982. Cook, Inc. removed the case to federal district court and moved for summary judgment on the ground inter alia that the applicable statute of limitations had expired. The court granted summary judgment on the ground that the cause of action was barred by the Indiana statute.
 
 
 17
 III. Question to be certified to the Supreme Court of Florida
 
 
 18
 For the purpose of applying Florida's limitation of actions "borrowing" statute, Fla.Stat.Ann. Sec. 95.10 (West 1982), is the determination whether a cause of action for theft of trade secrets has arisen in a state other than Florida to be made solely with reference to the state in which the "last act necessary to establish liability" occurred, Colhoun v. Greyhound Lines, Inc., 265 So.2d 18, 21 (Fla.1972), or with reference to the "significant relationships" that the respective states have to the cause of action, Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1000-01 (Fla.1980)? Cf. Pledger v. Burnup & Sims, Inc., 432 So.2d 1323 (Fla.App. 4 Dist.1983), review denied 446 So.2d 99 (Fla.1984); Meehan v. Celotex Corp., 466 So.2d 1100 (Fla.App. 3 Dist.1985); Steiner v. Mt. Vernon Fire Ins. Co., 470 So.2d 3 (Fla.App. 2 Dist.1985) (per curiam).
 
 
 19
 Our statement of the question is not designed to limit the inquiry of the Supreme Court of Florida.
 
 
 20
 [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
 
 
 21
 Martinez v. Rodriguez, 394 F.2d 156, 159 n. 6 (5th Cir.1968).
 
 
 22
 The entire record in this case, along with copies of the briefs of the parties, are transmitted herewith.
 
 
 23
 CERTIFIED.
 
 
 
 [1]
 The district court found that, under either of the tests, (a) or (b), above, the cause of action arose in Indiana. This court cannot dispose of the case on this basis. It has concluded that the case must be remanded for reconsideration by the district court of the choice of law issue, under the correct standard. If Indiana law is the correct state to which the court is to look, the content of the limitations law of that state with respect to theft of trade secret cases must be reexamined by the district court. And, if Indiana is not the correct state, the district court must proceed, with assurance that it is applying the correct test, to identify the correct state and apply its limitations law