Harold C. KRAMER and Joan W. Kramer, his wife, Plaintiffs-Appellants,

v.

PIPER AIRCRAFT CORPORATION, a Pennsylvania corporation, Defendant-Appellee.

No. 85–5727.

United States Court of Appeals, Eleventh Circuit.

Oct. 15, 1986.

Stinson, Lyons & Schuette, P.A., Douglas S. Lyons, Miami, Fla., for plaintiffs-appellants.

James E. Tribble, Blackwell Walker, Fascell & Hoehl, Miami, Fla., for defendant-appellee.

Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and ATKINS *, Senior District Judge.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS TO THE SUPREME COURT OF FLORIDA PURSUANT TO FLORIDA STATUTES § 25.031.

TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF

It appears to the United States Court of Appeals for the Eleventh Circuit that the above matter involves a question or proposition of law of the State of Florida which may be determinative of the cause, and there appear to be no clear controlling precedents in the decisions of the Supreme Court of Florida. The United States Court of Appeals for the Eleventh Circuit therefore certifies the following questions of law of the State of Florida for instructions concerning such questions of law, based on the facts recited here.

### I. Style of Case

The style of the case in which this certification is made is as follows: HAROLD C. KRAMER and JOAN W. KRAMER, his wife, Plaintiffs-Appellants, versus PIPER AIRCRAFT CORP., a Pennsylvania corporation, Defendant-Appellee, No. 85–5727, United States Court of Appeals for the Eleventh Circuit, on appeal from the United States District Court for the Southern District of Florida.

### II. Statement of Facts

Harold and Joan Kramer were injured when the Piper Cherokee aircraft in which they were passengers crashed on take-off from Hummel Field near Topping, Virginia, on December 6, 1975. On March 30, 1978, approximately two years and four months after the crash, the Kramers filed their complaint in this action, naming the manufacturer of the plane, Piper Aircraft Corp., a Pennsylvania corporation, as the only defendant. The complaint asserted four different theories of recovery: negligence, strict liability, breach of implied warranty of fitness, and breach of implied warranty of merchantability.

The parties stipulated to a number of facts. The design, manufacture, and testing of the aircraft occurred in Florida. The sale of the aircraft took place in Philadelphia, Pennsylvania. The Kramers were not the purchasers of the aircraft and were not in privity with Piper. At the time of the crash, the Kramers were residents of New Jersey, although they now are residents of Florida. The final flight of the aircraft commenced and terminated in Virginia. Prior to the crash the airplane had been flown a total of 17 hours, six to seven of which were consumed in flying the aircraft from Florida to Pennsylvania and the rest in pilot familiarization and a flight from Philadelphia to Hummel Field. The preparatory servicing for the final flight was performed in Pennsylvania.

The district court entered summary judgment for Piper on the ground that the Virginia statute of limitations, which provides that every action for personal injuries, whether based on contract or tort, must be brought within two years of the date on which the cause of action accrues. Va.Code § 8.01–243; *Tyler v. R.R. Street & Co.*, 322 F.Supp. 541, 543 (E.D.Va.1971). It reasoned that the Virginia statute of

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

limitations applied because under Florida's "borrowing statute," Fla.Stat.Ann. § 95.10, the causes of action "arose" in Virginia, where the crash and injuries occurred. This Court remanded the case to the district court for further consideration in light of the then recent Florida decision of *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla.1980). The district court again entered judgment for Piper, citing *Pledger v. Burnup & Sims, Inc.*, 432 So.2d 1323 (Fla. 4th DCA 1983), *review denied*, 446 So.2d 99 (Fla.1984). This appeal followed.

Clarification of Florida law is necessary to the determination of this case in two respects, one of which may be answered by the decision on a certified question already before the Florida Supreme Court. As to the proper considerations for application of the correct statute of limitations to *Tort* actions, a panel of this Court certified the following question to the Florida Supreme Court in *Bates v. Cook, Inc.*, 791 F.2d 1525, 1528 (11th Cir.1986):

> For the purpose of applying Florida's limitation of actions 'borrowing' statute ... is the determination whether a cause of action for theft of trade secrets has arisen in a state other than Florida to be made solely with reference to the state in which the 'last act necessary to establish liability' occurred ... or with reference to the 'significant relationships' that the respective states have to the cause of action ...? [citations omitted]

The certified question in *Bates* deals only with the cause of action for "theft of trade secrets," but it is likely the court's response will be relevant to tort actions in general. In answering the questions certified in the present case, the Florida Supreme Court may choose to consider that issue in this case along with *Bates*, but we do not frame here the certified question because we would normally wait for the Florida court's answer in *Bates* and then consider whether further certification was necessary to correctly apply Florida law to this case.

Whether or not the tort claims are barred by the Virginia limitations period, however, leaves for consideration Kramers' implied warranty counts. Before this Court, the question has arisen whether the Kramers may benefit from an implied warranty theory under Florida law. It seems clear that the Kramers may not assert implied warranty claims under the Florida Uniform Commercial Code as they do not fall within the scope of the statute's intended beneficiaries. *See* Fla.Stat.Ann. § 672.-318 ("A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer, who is a guest in his home or who is an employee, servant or agent of his buyer if it is reasonable to expect that such person may use, consume, or be affected by the goods...."). If an implied warranty claim does exist, it must be of common law origin.

Before the Florida Supreme Court adopted the doctrine of strict liability in tort in *West v. Caterpillar Tractor Co.*, 336 So.2d 80 (Fla.1976), it made substantial inroads to removing the barrier of contractual privity in implied warranty actions. Among the first exceptions were food products, *Blanton v. Cudahy Packing Co.*, 154 Fla. 872, 19 So.2d 313 (1944), and inherently dangerous instrumentalities, *Matthews v. Lawnlite Co.*, 88 So.2d 299 (Fla.1956). An airplane in flight was considered a dangerous instrumentality *per se. Shattuck v. Mullen*, 115 So.2d 597 (Fla. 2d DCA 1959).

By the time of *West*, the requirement of privity had eroded to the point that the court could declare that the adoption of strict liability, "in most instances, accomplishes a change of nomenclature." 336 So.2d at 86. The court noted "that there are two parallel but independent bodies of products liability law. One, strict liability, is an action in tort; the other, implied warranty, is an action in contract." *Id.* at 88.

> The adoption of the doctrine of strict liability in tort does not result in the demise of implied warranty. If a user is injured by a defective product, but the circumstances do not create a contractual

relationship with a manufacturer, then the vehicle for recovery could be strict liability in tort. If there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains.

*Id.* at 91.

It is unclear from *West* whether the Florida Supreme Court meant to strike the fatal blow to all of the previous exceptions to the privity requirement and to confine implied warranty actions exclusively to the limits of the U.C.C. The federal courts have been uncertain on the point. The only post-*West* opinion expressly to address the need for privity in Florida, *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513 (D.D.C.1984), concluded "that the dictum in *West* did not reverse a long line of Florida decisions that hold that vertical privity is not required in order for a consumer to pursue claims against a manufacturer under the theory of implied warranty." *Id.* at 1528. Other courts have questioned the continuing validity of pre-*West* decisions. *Taylor v. American Honda Motor Co.*, 555 F.Supp. 59, 62 (M.D.Fla.1982). Still others have avoided the issue and reached decision on other grounds. *McQuiston v. K-Mart Corp.*, 796 F.2d 1346 (11th Cir.1986).

In the state courts, there have been a number of cases in which implied warranty claims have been asserted in non-privity situations, but which did not expressly discuss the issue, instead addressing other grounds. *E.g., Vaughn v. Edward M. Chadbourne, Inc.*, 462 So.2d 512 (Fla. 1st DCA 1985); *Copeland v. Celotex Corp.*, 447 So.2d 908 (Fla. 3d DCA 1984), *rev'd in part*, 471 So.2d 533 (Fla.1985); *GAF Corp. v. Zack Co.*, 445 So.2d 350 (Fla. 3d DCA), *review denied*, 453 So.2d 45 (Fla.1984); *Halpryn v. Highland Insurance Co.*, 426 So.2d 1050 (Fla. 3d DCA 1983); *Clark v. Boeing Co.*, 395 So.2d 1226 (Fla. 3d DCA 1981); *Nicolodi v. Harley-Davidson Motor Co.*, 370 So.2d 68 (Fla. 2d DCA 1979). Thus, it appears that Florida law is unresolved as to whether there continues to be a common law implied warranty cause of action against a product manufacturer by a foreseeable user of that product in the absence of privity.

If a common law implied warranty claim does exist under Florida law in these circumstances, an additional question arises as to how that cause of action is to be considered for purposes of the statute of limitations' borrowing statute. In a pre-*West* opinion, *Barfield v. United States Rubber Co.*, 234 So.2d 374 (Fla. 2d DCA), *cert. denied*, 239 So.2d 828 (Fla.1970), a district court of appeals held that the implied warranty claims were not governed by the then three-year statute of limitations for contract actions, but rather by the four-year statute relating to actions for relief not specifically provided for in the chapter. The court "recede[d] from any suggestion [in a prior decision] that a suit based on implied warranty by an ultimate consumer against a manufacturer is based on contract." *Id.* at 376. The court also declined to apply a tort label, noting that such an action was not "tortious" in the traditional sense of the word. *See also Creviston v. General Motors Corp.*, 225 So.2d 331 (Fla.1969). The only post-*West* cause we have located which raised this question did not decide the issue. *GAF Corp. v. Zack Co.*, 445 So.2d 350 (Fla. 3d DCA), *review denied*, 453 So.2d 45 (Fla. 1984).

### III. Questions to be Certified to the Supreme Court of Florida

1. Under Florida law, does a person injured while a passenger on an airplane have a cause of action in implied warranty against the airplane's manufacturer, separate and distinct from a strict liability action?

2. If the answer to question (1) is yes, which statute of limitations should be applied to such a cause of action?

The phrasing used in the certified question is not to restrict the Supreme Court's consideration of the issues in its analysis of the record certified in this case. This extends to the Supreme Court's restatement of the issue and the manner in which the answer is given. *See Martinez v. Rodriquez*, 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The clerk of the court is directed to transmit this certificate, as well as the briefs and record filed with the court, to the Supreme Court of Florida and simultaneously to transmit copies of the certificate to the attorneys for the parties.

QUESTIONS CERTIFIED.