[DO NOT  PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13162

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2011
JOHN LEY
CLERK

D.C. Docket  No.   3:08-cv-00037-TJC-TEM

ADAM B. BEAUREGARD,
as personal representative of the Estate of
Sarah Dawn Beauregard,

                                                          Plaintiff-Appellant,


                                        versus


CONTINENTAL TIRE NORTH AMERICA, INC.
a foreign corporation,

                                                          Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 26, 2011)

Before DUBINA, Chief Judge, HILL and EBEL,[1] Circuit Judges.

_____

[1]Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by
designation.

HILL, Circuit Judge:

Adam B. Beauregard, as the personal representative of Sarah Dawn Beauregard's estate, brought this wrongful death action against Continental Tire North America, Inc. ("Continental") under the district court's diversity jurisdiction. Beauregard alleged that Continental was negligent in the design, manufacture, testing, marketing, and/or selling of a tire that "experienced a catastrophic tread and belt separation" resulting in an accident in which Sarah Dawn Beauregard was ejected from the vehicle on which the tire was mounted and was killed.

Continental filed a motion for summary judgment, asserting that Beauregard had not created a triable issue of fact with respect to the alleged defect in the tire. After a hearing, the district court agreed and granted summary judgment for Continental. Beauregard filed a motion to alter or amend the judgment, but the district court reaffirmed its prior holding. We agree.

I.

The following facts are undisputed. Continental manufactured the allegedly defective tire in 1994, some eleven years and seven months before the accident. The tire's ownership, maintenance, use and storage history are largely unknown

for the ten-year period between its manufacture and its purchase by decedent's father. The decedent's father purchased the tire and three others, which were lying in a neighbor's Florida yard, in 2004 or 2005. He mounted the tires on his Jeep even though Jeep recommends installation of smaller size tires. He modified the Jeep to accommodate the larger tires by installing after-market "lift kits" that raise the body off the frame. Experts who examined the tire following the accident found evidence of a previous puncture in the tire; evidence that it had "bead" damage, possibly from having been mounted and remounted on different rims; and evidence of improper inflation (though the experts disagreed as to whether the tire had a history of being overinflated or under inflated).[2]

## II.

To prevail on his claim, Beauregard must first demonstrate the existence of a design or manufacturing defect present in the tire when it left Continental's manufacturing plant. *See West v. Caterpillar Tractor Co., Inc.*, 336 So. 2d 80, 86 (Fla. 1976). The only evidence Beauregard offered in this regard was the opinion of his tire failure expert. The district court held this testimony insufficient as a

---

[2]As to the accident itself, the facts are in dispute. The parties do not agree on whether the decedent's father hit something causing the tire tread to separate, whether the modifications he made to the Jeep caused him to be unable to steer following the tread separation, whether a piece of the tire tread hit or became lodged in the underside of the vehicle, and whether the decedent was properly fastened by her seatbelt.

matter of law to create a triable issue of fact as to the existence of such a defect. We agree.

Plaintiff's tire failure expert was Robert C. Ochs, who the district court found to be a well-qualified tire engineer who worked for Michelin Tire Corporation for twenty-five years before becoming a consulting engineer. Ochs examined the tire, prepared a Rule 26(a)(2)(B) expert report and gave a deposition in this case. He concluded that the tire failed when the upper and lower belts separated. In his deposition, however, he testified that "the mere fact that a tire sustained a tread belt separation in and of itself does not mean that [the] tire was defectively designed or manufactured."

As to the tire's design, Ochs testified that he had "no opinions" as to the tire's design because he had not been furnished with sufficient documentation to form such an opinion. Nonetheless, he speculated that the tire's design might be defective as the result of the presence of two short sections of cord or string that he found between the upper and lower belts of the tire. He thought that these cords might have introduced stress on the belts. He conceded, however, that neither of these cords was in the specific area of the tire where he determined the

4

belts separated.[3]  Furthermore, he conducted no tests to support his speculation that the cords might have caused stress on the belts.[4]

The district court held that this evidence was insufficient as a matter of law to create a triable issue of fact as to the presence of a design defect in the tire, and we agree.

As to the issue of a manufacturing defect, Ochs testified that belt separation is a "fatigue failure" that could be caused by using aged chemical compounds to create the belts, improper bonding between the belts, and/or from contamination that would cause a stress riser between the belts.  When questioned, however, he admitted that he had no information as to the chemical compounds used to create the belts.  He admitted that "all tires experience some loss of adhesion during their lifetime" and estimated the tire had between 30,000 and 40,000 miles on it at the time of the accident.

As to improper bonding, Ochs testified that the tire had "liner pattern marks" on it, which are evidence of manufacturing defects.  He admitted, however, that the marks were not at the point of tread separation on the tire and that he had

---

[3]The district court carefully examined this testimony in great detail, which we do not repeat here.  We agree with its observations and conclusions.  *See* Order, Docket # 106, ¶. 7-10.

[4]Continental's expert, who is familiar with the design process for this tire, testified that there is no defect in its design.

no evidence to support his opinion that such marks had probably been there prior to the accident. Furthermore, where there were such liner marks, there was no tread separation on the tire.[5]

The district court held that this opinion was predicated on "impermissible speculation and conjecture" and was, therefore, insufficient as a matter of law to create a triable issue of fact regarding the existence of a manufacturing defect in the tire. We agree.

Finally, Beauregard relies on *Cassisi v. Maytag Co.*, 396 So. 2d 1140 (Fla. 1st DCA 1981), to argue that he is entitled under Florida law to an inference of design or manufacturing defect under the circumstances of this case even if his expert's opinion does not raise such an inference. Under *Cassisi*, an inference of defect is permissible when the plaintiff can prove a malfunction that occurs during normal operation of the product. *Id.* at 1151. We have explained that where a "product malfunctions that would not malfunction but for the defect," a plaintiff is entitled to such an inference. *Horsham v. A.H. Robins Co.*, 734 F.2d 676, 683 (11th Cir. 1984). The *Cassisi* inference has been used to permit a defect claim to go to the jury in tire failure cases. *See, e.g., Derosier v. Cooper Tire & Rubber*

---

[5]The district court's complete examination of this testimony can be found at Order, Docket # 106, pp. 10-11.

*Co.*, 819 So. 2d 143 (Fla. 4ᵗʰ DCA 2002).

The district court rejected this argument, however, because Beauregard was unable to adduce sufficient evidence that there was a "malfunction" or that, if there was, that it occurred during "normal operation" of the tire. *See Cassisi*, 396 So. 2d at 1151. While Ochs testified that absent evidence of impact damage or signs of under inflation, a tread belt detachment "would be the result of a problem in the tire itself [meaning] a manufacturing or design defect," he admitted that such a detachment could be the result of abuse of the tire, such as improper storage conditions and exposure to extreme temperatures.

The undisputed evidence in this case is that the tire was eleven years and seven months old at the time of the accident; it had between 30,000 and 40,000 miles on it; the first ten years' ownership and maintenance history for the tire is unknown; the storage history for the tire is unavailable other than that it was lying outside in a Florida yard when purchased; it showed signs that might indicate excessive heat exposure; it showed some signs of improper inflation and rim mounting that can affect durability; it was not the right size for the vehicle to which it was mounted; it had been punctured previously; and Continental had not been advised of any problem with any other tires of this model that it manufactured. In view of this undisputed evidence, the district court held that

Beauregard did not show a malfunction during normal operation of the tire and, therefore, was not entitled to a *Cassisi* inference of defect.[6]  We agree.

### III.

The facts of this case are tragic, indeed.  But we agree with the district court that Beauregard has failed to adduce sufficient evidence of a design or manufacturing defect in Continental's tire to permit this case and its related claims to go forward.  Accordingly, the judgment of the district court is

AFFIRMED.

---

[6]See Order, Docket # 106, pp. 22 for its exhaustive discussion of the evidence that might support a *Cassisi* inference, but did not.